ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| **R.M.C. ORTHOPEDIC & SURGICAL, INC.,**<br><br>Apelante<br><br>v.<br><br>**ADMINISTRACIÓN DE COMPENSACIÓN POR ACCIDENTE DE AUTOMÓVILES (ACAA) y otros**<br><br>Apelado | TA2025AP00528 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm.:<br>**SJ2023CV06970**<br><br>Sobre:<br>Cobro de Dinero |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Cintrón Cintrón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de febrero de 2026.

Comparece ante nos R.M.C. Orthopedic & Surgical, Inc. (en adelante, "RMC" o "parte apelante") y solicita que revisemos una *Sentencia* dictada y notificada el 23 de septiembre de 2025, por el Tribunal de Primera Instancia (en adelante, "TPI"), Sala Superior de San Juan. Mediante el dictamen aludido, el foro primario declaró *Ha Lugar* la *Solicitud de Sentencia Sumaria* incoada por la Administración de Compensación por Accidentes de Automóviles (en adelante, "ACAA" o "parte apelada").

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

**I.**

El 20 de julio de 2023, RMC incoó una *Demanda* sobre cobro de dinero en contra de la ACAA. En esta, adujo que suplió equipos, productos y sistemas de implantes ortopédicos para uso en pacientes cubiertos bajo el Programa de la ACAA durante los años 2004-2020. Añadió que, al cierre del mes de junio de 2023, la ACAA le adeudaba $569,869.84 por los sistemas de implantes de ortopedia

suplidos. Puntualizó que, aunque facturó diligentemente por los mismos y dio seguimiento al pago, la ACAA, de forma irregular pagaba algunas de las facturas y, sin justificación, dejaba otras sin pagar, manteniendo consistentemente un balance adeudado. Adujo que efectuó gestiones de cobro extrajudiciales para recobrar el dinero por los bienes y servicios solicitados, entregados, utilizados y/o implantados, con el servicio de técnico de sala en cada procedimiento quirúrgico, prestados a 141 pacientes de la ACAA desde el 2004 al 2018, pero no tuvo éxito.

Además, manifestó que, desde el 18 de abril de 2022, con *addendum* fechado el 27 de febrero de 2023, el suplido de RMC a la ACAA estaba sujeto a los términos de un contrato acordado entre las partes (número 2022-P00086). Precisó que la deuda acumulada por la ACAA previo a la vigencia del contrato existente era de $556,733.84, correspondientes a 144 facturas/lesionados/pacientes/casos de cirugía. Arguyó que, ante la inacción injustificada de la ACCA de procesar las facturas que se le sometieron oportunamente, y, a pesar de los requerimientos extrajudiciales realizados, a la fecha de corte del inicio de la vigencia del contrato se le adeudaba la mencionada suma. Destacó que la cantidad adeudada era líquida, exigible, estaba vencida, no estaba prescrita y se encontraba en mora.

Luego de varias enmiendas a la demanda, la ACAA presentó su contestación. Negó la mayoría de las alegaciones según fueron redactadas. En síntesis, razonó que las reclamaciones se realizaron fuera del término jurisdiccional correspondiente o estaban prescritas. Sobre la causa de acción de terminación del contrato por causa ilícita, esgrimió que siempre actuó conforme a la Ley y el contrato aplicable. Especificó que los contratos gubernamentales incorporan una cláusula que permite la cancelación a conveniencia de un acuerdo y no era necesario expresar la razón para ello. Añadió

que estaba impedida de pagar reclamaciones contrarias al mandato de la Ley Núm. 138 y la Ley Núm. 111. Asimismo, adujo que no le adeudaba partida de dinero alguna a RMC.

Tras varios incidentes procesales, el 21 de marzo de 2025, la ACAA instó una *Moción de Sentencia Sumaria.* En esta, aseguró que los hechos incontrovertidos evidenciaban la carencia de remedios en derecho por parte de RMC, por lo que resultaba innecesario proseguir con un juicio plenario. A su vez, aseveró que las reclamaciones de epígrafe fueron presentadas fuera del término jurisdiccional; que algunas se pagaron en su momento, o que nunca llegaron a registrarse en el sistema por no haberse presentado. Afirmó que ninguna de las denegaciones o reclamaciones fue impugnada por RMC dentro de los términos establecidos.

La ACAA puntualizó que los asuntos en controversia a resolver por el TPI eran los siguientes:

> ¿Tiene el Tribunal de Primera Instancia jurisdicción para entrar en los méritos de las 144 reclamaciones de conformidad con la Sección 5(5)(b) de la Ley 138 y Sección 4 de la Ley 111-2020?

> ¿Confería el Contrato Núm. 2022-P00086 a la ACAA la facultad de cancelar unilateralmente la relación contractual con RMC, mediante notificación previa de treinta (30) días, sin necesidad de expresar causa?

> ¿Tiene derecho la ACAA a solicitar honorarios de abogado por conducta frívola, temeraria y abuso del derecho?

Por lo anterior, solicitó al foro de instancia que determinara, conforme a las disposiciones constitucionales, que la ACAA no podía realizar pagos por la ley y/o los reglamentos aplicables para la liberación de fondos públicos. En su escrito, la ACAA realizó un desglose de cada una de las facturas reclamadas por RMC y la razón para su rechazo o pago parcial.

En cuanto a la terminación del contrato, la ACAA destacó que éste no requería que se cancelara únicamente cuando mediara "justificación legal o contractual alguna". Al mismo tiempo, esbozó

que se canceló al palio de la Sección XIII, subsecciones (1) y (2) del contrato núm. 2022-P00086, previa notificación a RMC. Sostuvo que RMC no produjo prueba alguna sobre los alegados daños producto de la cancelación del contrato.

De todas las reclamaciones incluidas en la demanda de referencia, la ACAA arguyó que, en cuanto a **105** de estas, no encontró ningún récord relacionado en su posesión, usando la información provista. En esa dirección, aseveró que era un hecho material para el que no existía controversia que, sobre dichas reclamaciones no existía evidencia alguna en el sistema "*Generalized Health Insurance Administration System*" (GHIAS), ni prueba física demostrativa que estas fueron presentadas ante la ACAA dentro del término jurisdiccional aplicable de 120 días posteriores al alegado servicio prestado.[1]

En torno a otro grupo de **8** reclamaciones, sobre los cuales existe tracto en el sistema GHIAS, pero los expedientes físicos no existen porque fueron decomisados, la ACAA alegó que fueron aprobadas con una cuantía distinta para cada una. Añadió que no existía evidencia alguna en el sistema GHIAS ni en expediente de la ACAA que demostrara que los pagos efectuados hayan sido impugnados por RMC o que éste solicitara un ajuste de pago dentro del término jurisdiccional de 45 días. Pormenorizó que era un hecho material para el cual no existía controversia que 7 de las 8 fueron presentadas fuera del término jurisdiccional de 120 días. A su vez, explicó que la octava reclamación se denegó porque el director

---

[1] Además, expuso que aquellas reclamaciones que alegaran servicios prestados antes del 14 de noviembre de 2020 les aplicaban la Ley Núm. 138, Sección 5(5)(b), la cual impedía que las reclamaciones se pagaran si se radicaban fuera del término jurisdiccional de 120 días siguientes a la fecha en que se prestaron los servicios. Añadió que, en aquellas que se alegara algún servicio prestado después del 14 de noviembre de 2020, les aplicaban la Ley 111-2020, Artículo 4 (G), que impedía que las reclamaciones se pagaran si eran radicadas fuera del término de estricto cumplimiento de 120 días siguientes a la fecha en que se prestaron los servicios.

ejecutivo determinó que las lesiones no fueron producidas por un accidente de automóvil.

Para las otras reclamaciones, la ACAA alegó que poseía la hoja informativa del sistema GHIAS, así como copia física del expediente. A tales efectos, sostuvo que RMC las presentó fuera del término jurisdiccional de 120 días; otras reflejaban pagos satisfactorios o denegatorias por falta de documentos y otros pagos de forma ajustada. La ACAA destacó que no existía evidencia alguna en el sistema GHIAS ni en los expedientes físicos que demostrara que RMC haya impugnado o solicitado un ajuste de pago dentro del término jurisdiccional de 45 días posteriores al rechazo de la factura.

Con relación a la causa de acción de terminación del contrato, la ACAA razonó que RMC no podía alegar que la reconocida facultad de hacer efectiva una cláusula que permitía esta acción era inválida. Resaltó que los términos del contrato núm. 2022-P00086—sobre la cancelación—eran claros y no dejaban duda sobre la intención de los contratantes.

Por último, la ACAA adujo que RMC procedió con incuria y no fue diligente en sus reclamos, particularmente por traer a la atención del Tribunal reclamaciones tan remotas como de 20 años atrás. También alegó temeridad, frivolidad, abuso del derecho, y requirió honorarios de abogado.

De otro lado, RMC instó su *Oposición a Solicitud de Sentencia Sumaria*. Allí refutó los hechos sobre los cuales la ACAA entendía que no existía controversia. Además, resaltó lo siguiente:

   a. la ACAA nunca ha negado que recibió los bienes por los que RMC reclama pagos, como tampoco ha negado que los procedimientos de cirugía se realizaron.

   b. que RMC no brinda "servicios" a la ACAA, por lo que no le aplica los artículos de ley que son, en esencia, la única base legal utilizada por la ACAA para negarse a pagar lo que debe.

b. la ACAA admite que destruyó los expedientes físicos de al menos 70 casos de los reclamados en la Tercera Demanda Enmendada y que no tiene expedientes físicos de otros 35. En otras palabras, la ACAA admite no tener prueba alguna (ni para refutar la entrega ni para establecer que pagó) de un total de 105 casos, sea porque la destruyó o porque no la pudo localizar.

c. la ACAA pretende trasladar su responsabilidad de preservar documentos de reclamaciones pendientes a la RMC exigiéndole a ésta que produzca copia de facturas "ponchadas", cuando dicha obligación es inexistente.

d. que, durante el periodo de las reclamaciones del caso, la normativa de la ACAA con relación a cómo regular la facturación de los proveedores de bienes indispensables para cirugías, cambió en múltiples ocasiones y que, pese a ello, nunca le dio requerimiento "jurisdiccional" a la fecha de entrega de las facturas de ese tipo. Tampoco definió la venta de bienes como equivalente de una prestación de servicio (cirugías), lo cual es una premisa falaz en la que la parte demandada su argumentación para justificar su negativa a pagar los bienes comprados a y entregados por la parte demandante.

e. la ACAA atendió con extremada ligereza la segunda causa de acción que pretende desestimar sumariamente, ignorando la normativa jurídica que reconoce una causa de acción a quien sufre un daño por abuso del derecho.

Asimismo, a grandes rasgos apuntaló que la Asamblea Legislativa expresamente impuso términos para que los proveedores de servicios en la ACAA presentaran sus facturas, no para los suplidores de productos y materiales. Añadió que, tratándose de una disposición sobre jurisdicción, ésta no podía extenderse indefinidamente a todos los tipos de proveedores que la ACAA tiene, entre ellos, aquellos que como RMC entregan bienes indispensables para las cirugías. Argumentó que no fue hasta el 2013 que la ACAA mencionó en una Carta Normativa que "El proveedor tendrá 120 días, contados a partir de la fecha de la cirugía, para someter reclamaciones de pago....", pero no hizo referencia a la ley, porque esta nada menciona en torno a ese asunto. Así las cosas, sostuvo que colocó bajo juramento que todas las facturas objeto de este pleito fueron entregadas conforme a la ley y reglamentación vigente al momento de la fecha de la cirugía y que nunca se trató de un

término jurisdiccional de 120 días. Por ende, despuntó que procedía la celebración de un juicio en su fondo para que el Tribunal pudiera aquilatar el testimonio de los testigos de RMC para establecer la entrega oportuna de las facturas comerciales cuyo pago se reclamaba.

Por último, puntualizó que el anterior director ejecutivo de la ACAA, por represalias (causa ilícita), de mala fe y en abuso de derecho, canceló el contrato de la entidad que dirigía como consecuencia directa de que RMC persiguiera una acción judicial para el pago de lo adeudado. Alegó que dichos actos causaron daños a la reputación de RMC, entre otras cosas, que procedía detallar en corte abierta.

El 9 de julio de 2025, RMC presentó una moción de desistimiento parcial de 18 de los casos reclamados. De conformidad con lo solicitado, el 10 de julio de 2025, el TPI dictó *Sentencia Parcial* al amparo de la Regla 39.1 (b) de las de Procedimiento Civil y concedió el desistimiento con perjuicio solicitado.[2]

Trabada así la controversia, el 23 de septiembre de 2025, el foro primario emitió la *Sentencia* bajo nuestra consideración. Según adelantado, el TPI declaró *Ha Lugar* la solicitud de sentencia sumaria presentada por la ACAA. En su dictamen, el Tribunal consignó las siguientes determinaciones de hechos materiales sobre los cuales concluyó no existía controversia:

Determinaciones de hechos introductorios:[3]

1. Desde el año 1990, RMC suple a la ACAA "implantes ortopédicos utilizados principalmente por los cirujanos ortopedas en sala de operaciones, implantes y prótesis internas que son implantados en las áreas tratadas de los pacientes lesionados".

2. RMC reconoce que, desde el comienzo de la relación cliente-suplidor con la ACAA, se ha requerido órdenes

---

[2] Conforme identificados en la *Tercera Demanda Enmendada*, estos son: 10, 13, 16, 28, 41, 57, 66, 113, 120, 121, 123, 125, 129, 130, 132, 137, 140 y 143.
[3] Notas al calce omitidas.

de compra "caso a caso y conforme a la receta y/u orden del cirujano que atendería el paciente accidentado".

3. Antes del Contrato 2022-P00086 suscrito entre RMC y la ACAA el 21 de abril de 2022, RMC brindaba servicio a la ACAA por medio de órdenes de compra, conforme a la receta y/u orden del cirujano que atendería al paciente lesionado.

4. RMC reconoció que, dentro de su procedimiento de facturación, conocía del término de 120 días para facturar a la ACAA.

5. RMC expresó que la documentación para todos los casos (reclamados en la Tercera Demanda Enmendada), salvo los casos enumerados del 138 al 144, fue objeto de pérdida debido a los daños provocados por el huracán María al almacén en South Self Storage 3511, Guaynabo en septiembre de 2017.

6. El 9 de abril de 2024, RMC proveyó a ACAA copia de las facturas comerciales para los casos enumerados del 1-144, según producidas por su sistema de facturación "Quickbooks Enterprise".

7. Las facturas comerciales producidas por RMC durante el descubrimiento de prueba, son impresiones de su sistema de facturación, no cuentan con la firma del representante de RMC, ni poseen el ponche de presentación en la ACAA.

8. RMC no tiene récord escrito de las gestiones de cobro hechas posterior al envío inicial de la factura.

9. La factura por Servicios Médicos, Hospitalarios y Ancilares (Forma ACAA 300-136) tiene una advertencia en negrillas abajo de la firma del proveedor que lee "Para ser válidas, las facturas deberán ser remitidas antes de los 120 días luego de ofrecer los servicios".

Para **105[4] casos reclamados** por RMC, el TPI determinó que no existía prueba alguna en el sistema GHIAS de la ACAA, y tampoco prueba física que demostrara que la Factura por Servicios Médicos, Hospitalarios y Ancilares (Forma ACAA 300-136) relacionada con esta reclamación fue presentada, dentro del término jurisdiccional ante la ACAA. Añadió que RMC no evidenció la presentación de la

---

[4] 1, 2, 3, 4, 6, 7, 8, 9, 11, 12, 14, 15, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 58, 59, 60, 61, 62, 63, 64, 65, 67, 68, 69, 70, 71, 72, 73, 74, 75, 77, 78, 79, 80, 82, 83, 84, 85, 88, 90, 91, 92, 94, 95, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 111, 114, 118, 119, 122, 124, 128, 133, 134, 141 y 144.

Factura Forma ACAA 300-136 en la ACAA ni de los documentos necesarios para procesar la factura.

Para el **caso reclamado núm. 5** por la cantidad de $6,506.00, el Tribunal expresó que quedó incontrovertido su pago por la suma de $2,300.00, mediante el váucher o vale de cheque núm. 145158, el 29 de septiembre de 2005. Además, precisó que RMC no entregó ni tenía prueba de haber presentado una solicitud de ajuste ni de impugnación dentro del término jurisdiccional de 45 días, y que tampoco existía prueba alguna en el sistema GHIAS ni en el expediente de la ACAA a tales efectos.

En cuanto a otros **12[5] casos** reclamados por RMC, el foro de instancia concluyó que existía récord bajo el sistema GHIAS de la ACAA, así como copia física del expediente. No obstante, las facturas fueron presentadas fuera del término jurisdiccional de 120 días aplicable.

Además, en relación con otros **siete (7)[6] casos** reclamados por RMC, el foro *a quo* concluyó que surgía del sistema GHIAS que estas facturas fueron rechazadas por diversas razones, entiéndase: no ser cirugías de emergencia de 48 horas; no estar firmada y presentar una reclamación incompleta en incumplimiento con la normativa de la ACAA. El Tribunal determinó que no existía prueba alguna en el sistema GHIAS ni en el expediente de la ACAA que demostrara que se haya impugnado o que se haya solicitado un ajuste de pago dentro del término jurisdiccional de 45 días.

Para el **caso reclamado 76**, el Tribunal determinó que quedó incontrovertido que el director ejecutivo de la ACAA, mediante decisión del 9 de marzo de 2011, estableció que las lesiones no fueron producidas por un accidente de auto. Añadió que RMC no presentó ninguna prueba de que se haya impugnado esta

---

[5] 81, 86, 87, 89, 93, 96, 110, 112, 115, 116, 117 y 136.
[6] 126, 127, 131, 135, 138, 139 y 142.

determinación.

Por otra parte, en cuanto a la causa de acción de terminación de contrato por represalia, el TPI realizó las siguientes determinaciones de hechos sobre el contrato:

[...]

33. El 21 de abril de 2022, se otorgó el contrato núm. 2022-P00086 entre RMC y la ACAA.148

34. El 21 de abril de 2025 culminaba la vigencia del contrato núm. 2022-P00086 149

35. La Sección XIII, subsecciones (1) y (2) del contrato núm. 2022- P00086, establecen la facultad unilateral de cancelar, previa notificación de 30 días, la relación contractual con RMC 150

36. La ACAA canceló el contrato con RMC, previa notificación a esos efectos 151

37. El 30 de agosto de 2023, la ACAA remitió una comunicación de cancelación de contrato núm. 2022-P00086 en la cual se le notificó a RMC dicha resolución, expresando que:

> [e]l 21 de abril de 2022, la Administración de Compensaciones por Accidentes de Automóviles (ACAA) y RMC Orthopedic & Surgical, Inc. suscribieron un contrato de Implantes Ortopédicos. La Sección XIII, sobre Vigencia, inciso 2, "Notificación de Cancelación. Cualquiera de las partes podrá dar por terminado este contrato con una notificación escrita de treinta (30) días de anticipación a la fecha en que se interese la resolución..."

> A esos efectos, le notificamos formalmente que la relación contractual entre usted y la ACAA quedará resuelta, efectivo el 30 de septiembre de 2023.

En primera instancia, el foro primario concluyó que era un hecho incontrovertido que, desde el año 1990, RMC suplía a la ACAA "implantes ortopédicos utilizados principalmente por los cirujanos ortopedas en sala de operaciones, implantes y prótesis internas que son implantados en las áreas tratadas de los pacientes lesionados". Añadió que RMC es una corporación que se dedica a la distribución de equipo médico quirúrgico altamente especializado. En ese contexto, dispuso que no halló normativa legal o reglamentación pertinente que excluyera el tipo de servicio que RMC le ha brindado a la ACAA, de considerarse como un servicio de salud o uno médico-

hospitalario. Destacó que, el proveer los equipos médicos quirúrgicos comprendía un servicio esencial que garantizaba los beneficios que la ACAA debe proveer conforme su ley habilitadora. Además, subrayó que el propio contrato suscrito en el 2022 entre las partes reconoce a RMC como un proveedor para prestar servicios médicos hospitalarios. Así, al establecer que RMC es un proveedor de servicios conforme lo requiere la ley de la ACAA, concluyó que a RMC le aplicaban los términos para presentar reclamaciones por servicios médico-hospitalarios impuestos, tanto por la anterior Ley Núm. 138, como por la actual Ley Núm. 111-2020.

De otro lado, el Tribunal decretó que la ACAA logró establecer con la prueba documental presentada junto con la moción de sentencia sumaria, que las reclamaciones en cobro de dinero estaban prescritas por haberse presentado fuera del término de 120 días; o por no haberse impugnado el pago oportunamente; o por no existir prueba alguna que demostrara que dichas reclamaciones cumplieron con presentarse dentro del término requerido. Además, expuso que un mínimo de las reclamaciones fue denegada por someterse de manera incompleta.

A tenor con lo anterior, el TPI expresó lo siguiente:

> Basado en lo anterior, y en el derecho aplicable, este tribunal concluye que todas las reclamaciones en cobro de dinero según identificadas en la Tercera Demanda Enmendada y en la Moción de Sentencia Sumaria, se encuentran prescritas. La ACAA presentó la prueba documental que establece la inexistencia de una causa de acción en cobro de dinero, la cual no fue controvertida por RMC. Sencillamente, RMC no logró controvertir el hecho de que no presentó los formularios de facturación determinados, debidamente cumplimentados y dentro del término que exige la ley de ACAA.

Por otra parte, en cuanto a la causa de acción de cancelación indebida de contrato levantada por RMC, el juzgador de los hechos manifestó que, en el ámbito de la contratación pública, nuestro Tribunal Supremo ha reconocido que las partes pueden pactar una

cláusula resolutoria unilateral que confiera a una sola de ellas la facultad de poner fin a la relación contractual por su mera voluntad, esto en perfecta armonía con el principio de *pacta sunt servanda*. Destacó que, según la Sección XIII del Contrato, sobre Vigencia, inciso 2, la ACAA cumplió con su deber de notificación de 30 días, por lo que canceló el contrato conforme a derecho.

En suma, el Tribunal determinó que la ACAA demostró la inexistencia de una causa de acción en cobro de dinero por prescripción y que RMC no presentó la prueba documental que controvirtiera el hecho de la cancelación del contrato se realizó conforme a derecho. Por ende, dictó sentencia sumaria a favor de la ACAA, desestimando con perjuicio la *Tercera Demanda Enmendada*.

Inconforme con la referida decisión, el 8 de octubre de 2025, RMC presentó *Reconsideración*, pero el foro *a quo* denegó dicho petitorio mediante *Orden* emitida el 10 de octubre de 2025.

Aun en desacuerdo, RMC acude ante este foro revisor y le señala al TPI la comisión de los siguientes errores:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL APLICAR A RMC TÉRMINOS JURISDICCIONALES O DE CUMPLIMIENTO ESTRICTO DE FACTURACIÓN CONTENIDOS EN LA LEY 138-1968 Y EN LA LEY 111-2020, DISPOSICIONES QUE APLICAN EXCLUSIVAMENTE A PROVEEDORES DE SERVICIOS, NO A SUPLIDORES DE BIENES MEDIANTE COMPRAVENTA.
>
> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL APLICAR UN SUPUESTO PLAZO JURISDICCIONAL" DE FACTURACIÓN, SIN FUNDAMENTO EN SU LEY HABILITADORA NI EN REGLAMENTACIÓN VÁLIDA EN CUANTO A LA APELANTE RESPECTA, Y SIN CONSIDERAR PRUEBA DEMOSTRATIVA DE QUE LA PROPIA ACAA NO HA TRATADO DICHO PLAZO COMO JURISDICCIONAL.
>
> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, ANTE LA AUSENCIA DE PRUEBA DE ACAA SOBRE MÁS DE UN CENTENAR DE CASOS RECLAMADOS, AL AQUILATAR, SOPESAR Y DESCARTAR LA PRUEBA DOCUMENTAL Y TESTIFICAL DE RMC QUE ESTABLECE SU RECLAMACION DE COBRO, COSA QUE NO CORRESPONDE HACER EN UN PROCESO DE DISPOSICION SUMARIA BAJO LA REGLA 36.

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL ACEPTAR COMO INCONTROVERTIDA LA PRUEBA DE ACAA BASADA EN UNA DECLARACIÓN JURADA INSUFICIENTE Y UN SISTEMA INTERNO QUE LA OFICINA DEL CONTRALOR DE PUERTO RICO CATALOGO COMO POCO CONFIABLE, Y AL DESCARTAR LA PRUEBA DE RMC SOBRE LAS FACTURAS DE LOS CASOS Y SU PRESENTACIÓN, SOBRE LO CUAL ACAA ADMITIÓ NO TENER EVIDENCIA.

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESCARTAR LA PRUEBA DOCUMENTAL Y TESTIFICAL DE RMC DE REPRESALIA Y ABUSO DEL DERECHO DEL DIRECTOR DE ACAA PARA ESTABLECER LA CAUSA DE ACCIÓN DE CANCELACIÓN ILICITA Y CONTRA EL INTERES PUBLICO DEL CONTRATO, AMPARANDOSE EN LA EXISTENCIA DE UNA CLAUSULA DE NOTIFICACIÓN DE CANCELACIÓN EN TREINTA DIAS E IGNORANDO LA EXISTENCIA DE UNA CLÁUSULA DE JUSTA CAUSA Y LA NECESIDAD DE DIRIMIR INTENCIÓN Y CREDIBILIDAD EN UN JUICIO.

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA Y ABUSÓ DE SU DISCRECIÓN AL NO PERMITIR LA EXTENSIÓN DEL CALENDARIO DE DESCUBRIMIENTO DE PRUEBA ÚNICAMENTE A LOS FINES DE TOMAR LAS DEPOSICIONES, Y EN PARTICULAR LA DEL DIRECTOR EJECUTIVO DEMANDADO, QUIEN FUE LA PERSONA QUE CANCELÓ EL CONTRATO EN REPRESALIA, DE MALA FE Y EN ABUSO DE DERECHO.

El 3 de diciembre de 2025, la parte apelada, ACAA, compareció mediante *Alegato en Oposición*.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

### A.

La Regla 36 de Procedimiento Civil dispone el mecanismo extraordinario y discrecional de la sentencia sumaria. 32 LPRA, Ap. V, R. 36. El propósito principal de este mecanismo procesal es propiciar la solución justa, rápida y económica de litigios civiles que no presentan controversias genuinas de hechos materiales, por lo que puede prescindirse del juicio plenario. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro*, res. el 7 de enero de 2025, 2025 TSPR 1; *Serrano Picón v. Multinational Life Ins*, 212 DPR

981 (2023).[7] Los tribunales pueden dictar sentencia sumaria respecto a una parte de una reclamación o sobre la totalidad de esta. 32 LPRA Ap. V, R. 36.1; *Meléndez González v. M. Cuebas,* 193 DPR 100 (2015). La sentencia sumaria procederá si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, junto a cualquier declaración jurada que se presente, si alguna, demuestran que no hay controversia real y sustancial sobre algún hecho esencial y pertinente y que, como cuestión de derecho, procede hacerlo. *González Meléndez v. Mun. San Juan et al.,* 212 DPR 601 (2023).

El promovente debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes sobre la totalidad o parte de la reclamación. 32 LPRA Ap. V, R. 36.1; *Universal Ins. y otro v. ELA y otros*, 211 DPR 455 (2023). La controversia sobre los hechos esenciales que genera el litigio tiene que ser real, no especulativa o abstracta. Es decir, tiene que ser de naturaleza tal que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes. *Ramos Pérez v. Univisión,* supra, págs. 213-214, seguido en *Meléndez González v. M. Cuebas,* supra, pág. 110.

Nuestro ordenamiento civil y su jurisprudencia interpretativa dispone que se deben cumplir unos requisitos de forma los cuales deben satisfacerse al momento de presentar una solicitud de sentencia sumaria. Estos requisitos son: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria, (4) una relación concisa, organizada y en

---

[7] Véase, además: *Oriental Bank v. Caballero García,* 212 DPR 671 (2023); *Ferrer et. al. v. PRTC,* 209 DPR 574, 580-581 (2022); *González Santiago v. Baxter Healthcare,* 202 DPR 281, 290 (2019); *Ramos Pérez v. Univisión,* 178 DPR 200, 213-214 (2010).

párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del Tribunal; (5) las razones por las cuales se debe dictar sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019).

Por su parte, le corresponde a la parte promovida refutar dicha moción a través de declaraciones juradas u otra documentación que apoye su posición. Esto es, la parte que se opone debe proveer evidencia sustancial de los hechos materiales que están en disputa. *León Torres v. Rivera Lebrón*, 204 DPR 20 (2020). El hecho de no oponerse a la solicitud de sentencia sumaria no implica necesariamente que ésta proceda si existe una controversia legítima sobre un hecho material. Sin embargo, el demandante no puede descansar en las aseveraciones generales de su demanda, "sino que, a tenor con la Regla 36.5, estará obligada a 'demostrar que [tiene] prueba para sustanciar sus alegaciones'". La Regla 36.5 de Procedimiento Civil, dispone que de no producirse por parte del opositor una exposición de hechos materiales bajo juramento, deberá dictarse sentencia sumaria en su contra. 32 LPRA Ap. V, R. 36.5; *Ramos Pérez v. Univisión*, supra, págs. 215-216.

La Regla 36.4 de Procedimiento Civil, establece que, si no se dicta sentencia sobre la totalidad del pleito, ni se concede todo el remedio solicitado o se deniega la moción de sentencia sumaria, y, por tanto, es necesario celebrar juicio, será obligatorio que el Tribunal en su dictamen determine los hechos esenciales sobre los

cuales no haya controversia sustancial y aquellos que sí se encuentran genuinamente en controversia. 32 LPRA Ap. V, R.36.4.

Cónsono con lo anterior, nuestro estado de derecho le impone y exige al TPI, exponer los hechos materiales y esenciales que están en controversia, así como los que no lo están, independientemente de cómo resuelvan una solicitud de sentencia sumaria. *Meléndez González v. M. Cuebas*, supra, pág. 117. Al evaluar la solicitud de sentencia sumaria, el juzgador deberá: (1) analizar los documentos que acompañan la moción solicitando la sentencia sumaria, los incluidos con la moción en oposición y aquellos que obren en el expediente judicial y; (2) determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 913-914 (1994).

Por último, en *Meléndez González v. M. Cuebas,* supra, el Tribunal Supremo de Puerto Rico estableció el estándar de revisión que debe utilizar este foro apelativo intermedio al revisar denegatorias o concesiones de mociones de sentencia sumaria. Conforme a ello, debemos utilizar los mismos criterios que los tribunales de primera instancia al determinar si procede dictar sumariamente una sentencia. En esta tarea sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia y determinar si existe o no alguna controversia genuina de hechos pertinentes y esenciales, y si el derecho se aplicó de forma correcta. La tarea de adjudicar los hechos relevantes y esenciales en disputa le corresponde únicamente al foro de primera instancia en el ejercicio de su sana discreción. *Vera v. Dr. Bravo,* 161 DPR 308, 334 (2004). Nuestro Más Alto Foro ha pautado que este Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar solicitudes de sentencia sumaria. *Meléndez González v. M. Cuebas*, supra, págs.

118-119. Es decir, debemos revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. *Íd.*

**B.**

La Ley Núm. 138 de 26 de junio de 1968, según enmendada, conocida como la *Ley de Protección Social por Accidentes de Automóviles*, 9 LPRA sec. 2051 *et seq.*, estableció un Sistema de Seguro y Compensación por Accidentes de Tránsito y creó una instrumentalidad pública conocida como la Administración de Compensaciones por Accidentes de Automóviles, entre otras cosas.

En lo pertinente, la Sección 5 (5)(b) de la referida Ley, 9 LPRA sec. 2054, disponía lo siguiente:

> Las facturas por reclamaciones de servicios de salud prestados deberán radicarse no más tarde de los ciento veinte (120) días siguientes a la fecha en que se prestaron los servicios.
> Toda reclamación con respecto a la devolución de facturas o al pago hecho por la Administración por facturas de servicios de salud, deberá radicarse dentro de los cuarenta y cinco (45) días siguientes a dicho pago.
> Siempre que el último día para radicar las facturas por reclamaciones a tiempo sea sábado, domingo, día feriado o no laborable en la Administración, dichas facturas se considerarán radicadas a tiempo siempre y cuando sean radicadas en el próximo día laborable.
> Aquellas facturas que se reciban después del límite de tiempo para radicar las mismas no serán pagadas por la Administración.
> Todos los términos y condiciones establecidos en este subinciso son de carácter jurisdiccional y el incumplimiento de éstos priva a la administración o al tribunal con autoridad para entender en los mismos.

La Ley Núm. 168 fue derogada por la Ley Núm. 111 de 14 de agosto de 2020, conocida como la *Ley de Protección Social por Accidentes de Vehículos de Motor de 2020.* Esta Ley tiene el objetivo de que la ACAA pueda adaptarse a las necesidades actuales, sin abandonar su propósito fundamental de reducir los trágicos efectos sociales y económicos producidos por los accidentes de tránsito sobre los lesionados, su familia y demás dependientes.

En lo que atañe al caso de autos, el Artículo 4(G) de la Ley Núm. 111-2020, 9 LPRA sec. 3164, dispone:

[...]

Las facturas por reclamaciones de servicios de salud prestados deberán radicarse no más tarde de ciento veinte (120) días calendario, contados a partir de la fecha en que se prestaron los servicios.

Toda reclamación con respecto a la devolución de facturas o al pago hecho por la Administración por facturas de servicios de salud deberá radicarse dentro de los cuarenta y cinco (45) días calendario, a partir de la fecha de notificación de la Administración o de la fecha del matasellos, la que fuera posterior.

Siempre que el último día para radicar las facturas por reclamaciones a tiempo, sea sábado, domingo, día feriado o no laborable en la Administración, dichas facturas se considerarán radicadas a tiempo, siempre y cuando sean radicadas en el próximo día laborable.

Los términos y condiciones establecidos en este subinciso serán de cumplimiento estricto. Se faculta al Director Ejecutivo, con la aprobación de la Junta, establecer mediante reglamento, las excepciones en el trámite de pagos.

### III.

Por tratarse de una sentencia sumaria, debemos evaluar *de novo* las solicitudes a favor y en contra de tal proceder, en unión a la documentación que surge del expediente. Así pues, examinamos la *Moción de Sentencia Sumaria* presentada por la parte apelada, la ACAA y la *Oposición a Moción de Sentencia Sumaria* de la parte apelante, RMC. Adelantamos que, luego de un análisis detenido del expediente, así como de la normativa aplicable, concluimos que los errores señalados por la parte apelante no se cometieron. Por tanto, no incidió el foro primario al conceder el remedio sumario en cuestión. Veamos.

En esencia, la parte apelante sostiene que el foro primario se equivocó al conceder la sentencia sumaria y desestimar, con perjuicio, el pleito de referencia. Ello, a pesar de existir hechos materiales en controversia.

En sus primeros dos señalamientos de error, la parte apelante arguye que el foro *a quo* erró al aplicarle las disposiciones de la Ley Núm. 138 (derogada) y de la Ley Núm. 111-2020, las cuales establecen términos de facturación exclusivamente aplicables a proveedores de servicios de salud, no a suplidores de bienes. En ese sentido, manifiesta que el juzgador de los hechos transformó, sin base jurídica, una relación de compraventa en una supuesta relación de prestación de servicios. Alega que lo anterior constituyó un error de derecho que tuvo el efecto de permitir que la parte apelada quedara liberada de su obligación de pagar por los bienes vendidos, entregados y consumidos. Así, es su contención que no le aplica el término jurisdiccional contenido en la Ley de la ACAA. Resalta que la parte apelada parece descansar en sus propias deficiencias administrativas y/u operacionales internas como excusa para evadir sus obligaciones y evitar el pago de bienes ya ordenados, entregados y consumidos.

En su tercer y cuarto señalamiento de error, la parte apelante razona que el foro de instancia erró al resolver sumariamente un caso donde existen controversias genuinas de hechos materiales y de derecho sustantivo, las cuales solo pueden dirimirse mediante prueba en juicio.

Añade que el sistema GHIAS de la ACAA contiene registros incompletos, errores y discrepancias no explicadas por sus funcionarios, que lo convierte en un sistema no confiable para descartar la existencia de facturas presentadas por RMC. Sostiene que produjo evidencia detallada y juramentada que acredita la presentación y entrega de las facturas, incluyendo los nombres de pacientes, médicos tratantes, fechas, lugares de procedimientos y descripción de los productos suplidos y cantidades facturadas. A lo anterior, añade que dicha prueba no fue controvertida por la parte apelada.  Entiende que el Tribunal de Primera Instancia erró, tanto

en la aplicación del derecho, como en la apreciación de la prueba, al otorgar valor probatorio a declaraciones insuficientes de la parte apelada y desechar sin fundamento la evidencia sustantiva y jurada presentada por la parte apelante.

En armonía con lo anterior, aduce que la parte apelada se amparó en una declaración jurada estereotipada suscrita por Carmen Yolanda Vázquez Ortiz, gerente de la División de Intervención y Procesamiento de Facturas Médicas del Departamento de Finanzas de la ACAA, sin conocimiento personal y sin respaldo documental —fundada en expedientes destruidos y registros incompletos—. Destaca que, por el contrario, presentó al Tribunal prueba directa, precisa y verificable sobre los hechos materiales en controversia.

En el quinto señalamiento de error, la parte apelante alega que el TPI se equivocó al desestimar la segunda causa de acción sobre cancelación del contrato, bajo el fundamento de que se realizó "conforme a lo pactado". Ello, porque la ACAA notificó su terminación con 30 días de antelación, según la Sección XIII (2) del contrato núm. 2022-P00086. Por el contrario, la parte apelante colige que una mera lectura del contrato en cuestión demuestra que su contenido no valida la cancelación de manera unilateral y sin causas legítimas. Precisa que, aun asumiendo que el director ejecutivo de la ACAA tuviera la facultad para tal curso de acción, el ejercicio de un derecho no está exento de responsabilidad cuando se realiza en forma abusiva o contraria a la buena fe. Por ende, sostiene que dichos hechos son incompatibles con una adjudicación sumaria, porque involucran controversias genuinas sobre intención, motivo, causalidad y perjuicio, elementos que solo pueden determinarse mediante prueba testifical y documental en un juicio plenario.

En su último señalamiento de error, la parte apelante alega que el TPI abusó de su discreción al no permitir la extensión del calendario del descubrimiento de prueba, únicamente a los fines de realizar deposiciones —en particular la del director ejecutivo de la ACAA. Argumenta que ello limitó de manera sustancial e injusta su acceso a la prueba, privándole de desarrollar evidencia previa al juicio sobre la causa de acción de terminación ilegal de contrato en represalia, mala fe contractual y abuso de derecho.

Por su parte, la parte apelada arguye que  la parte apelante incumplió su deber bajo la Regla 36.3(c) de Procedimiento Civil, toda vez que, en lugar de refutar las fechas jurisdiccionales, de prescripción o la falta de documentos con evidencia admisible de presentación oportuna, descansó en negaciones generales que la propia jurisprudencia ha catalogado como insuficientes para la contratación gubernamental. Añade que, al no cumplir con el requisito de forma de presentar contraprueba específica y admisible para cada hecho propuesto en la solicitud de sentencia sumaria, el TPI actuó correctamente al dar por admitidos los hechos fundamentados en el aludido petitorio de desestimación sumaria.

Asimismo, la parte apelada resalta que los reglamentos y políticas de la ACAA, así como el propio Contrato Núm. 2022 P00086, son uniformes en la clasificación de las bandejas médico-quirúrgicas como equipo médico adscrito directamente al servicio de salud cubierto que la instrumentalidad pública provee a los lesionados de accidentes de tránsito. Particulariza que nunca ha tratado este tipo de transacción como una compraventa ordinaria de bienes ni como una adquisición comercial desligada del acto médico. Bajo esa premisa, sostiene que el contrato suscrito por la propia parte apelante así lo reconoce.

En cuanto al asunto de las reclamaciones, la parte apelada arguye que quedó en evidencia que las facturas impresas que

entregó la parte apelante tenían fechas distintas a las que aparecían en su propio sistema contable. Entiende que esas inconsistencias demostraron que las fechas impresas eran falsas y correspondían al registro electrónico original, por lo que no pueden considerarse evidencia confiable de presentación oportuna.

Respecto a la segunda causa de acción, la parte apelada razona que el contrato concernido permitía la terminación unilateral sin causa mediante aviso de 30 días. Sostiene que es un hecho incontrovertido que la ACAA cumplió con lo requerido. Además, colige que la motivación subjetiva de la mencionada instrumentalidad pública es un hecho inmaterial, toda vez que, aun si se probara la intención alegada, el resultado jurídico (la validez de la terminación) permanecería inalterado.

En suma, la parte apelada alega que procede concluir que el foro primario actuó conforme a derecho al desestimar sumariamente la demanda. Es su parecer que la parte apelante no logró establecer una controversia real y sustancial de hechos materiales que impidiera la disposición del caso sin la necesidad de un juicio plenario. Especifica que el tracto procesal ante el TPI demostró la ausencia total de prueba admisible para sostener sus causas de acción.

Tras un examen ponderado del expediente, así como de la normativa aplicable, concluimos que no existen controversias de hechos materiales que hagan improcedente, como cuestión de derecho, dictar sentencia sumaria en este caso. La parte apelada anejó a su solicitud de sentencia sumaria suficiente evidencia documental para probar cada una de sus alegaciones, por lo que demostró que no existían hechos materiales controvertidos que impidieran que el TPI dispusiera del asunto de forma sumaria.

En primer orden, cabe destacar que el TPI actuó correctamente al concluir que la parte apelante es un proveedor de

servicios conforme las disposiciones de la ley de la ACAA. Resulta evidente que los bienes y equipos médicos que provee comprenden un servicio médico-hospitalario, lo cual garantiza los beneficios que la ACAA debe proveer conforme su ley habilitadora. Por ende, le aplican los términos para presentar reclamaciones por servicios médico-hospitalarios impuestos por la anterior Ley Núm. 138-1968, como por la Ley Núm. 111-2020.

Aclarado lo anterior, según se desprende del expediente y de la *Sentencia* en cuestión, podemos colegir, en síntesis, que la parte apelada logró establecer con la evidencia anejada a la moción de sentencia sumaria, que las reclamaciones en cobro de dinero están prescritas por diversas razones, entiéndase: (1) haberse presentado fuera del término de 120 días; (2) no haberse impugnado el pago oportunamente; (3) no existir prueba alguna que demuestre que dichas reclamaciones cumplieron con presentarse dentro del término requerido o (4) por someterse de manera incompleta.

Es nuestro parecer que la parte apelante no pudo probar que cumplió las políticas, requisitos de facturación y pagos establecidos, tanto por la Ley de la ACAA, como por la reglamentación aplicable. En particular, el récord demuestra que falló en traer a la atención del Tribunal evidencia fehaciente de que presentó el formulario de facturación exigido por la ACAA (ACAA 300-136), debidamente cumplimentado, junto con el legajo requerido. También falló en probar que los mencionados formularios fueran presentados dentro de los términos de 120 días, o de 45 días en los casos de impugnación.

Específicamente, para 105 casos reclamados por la parte apelante, es un hecho cierto que no existe prueba en el expediente que demuestre que el formulario adecuado se presentó dentro del término jurisdiccional aplicable. Si bien la parte apelante intentó controvertir este hecho con la presentación de unas impresiones

desde su sistema de facturación comercial, ello no prosperó. Lo anterior, por no constituir el formulario requerido por la ACAA. Además, con las aludidas impresiones tampoco se logró comprobar que estas facturas se sometieron oportunamente a la consideración de la ACAA.

De otro lado, para 19 casos reclamados a la parte apelada, no existe controversia de que hay récord en el sistema de la ACAA y también existe copia física del expediente. No obstante, como bien determinó el TPI, la parte apelante instó la reclamación fuera de los 120 días aplicables, mientras que otros fueron denegados porque no sometió todos los documentos necesarios. Para las últimas dos reclamaciones quedó demostrado que: (1) fueron denegadas porque el director ejecutivo de la ACAA determinó que no estaba cobijada bajo la Ley Núm. 138 de 1968 y (2) no se impugnó el ajuste en el pago. Ciertamente, la parte apelada presentó la prueba documental necesaria que estableció la inexistencia de una causa de acción en cobro de dinero.

En cuanto a la causa de acción de terminación indebida de contrato, no existe controversia de que la parte apelada cumplió con su deber de notificación de 30 días, al palio de la Sección XIII del Contrato, inciso 2. Así las cosas, basado en la cláusula resolutoria unilateral pactada, la parte apelada canceló el contrato conforme a derecho. La parte apelante no logró controvertir ese hecho con prueba fehaciente, ni tampoco presentó prueba de los alegados daños causados mediante su oposición a la moción de sentencia sumaria.

En vista de ello, se configura en el marco fáctico todos los hechos esenciales que activan el derecho de la parte apelada de solicitar la desestimación de las causas de acción instadas en su contra. Por tanto, concluimos que no erró el foro primario en la

aplicación del derecho y, en consecuencia, procede confirmar la *Sentencia* apelada.

**IV.**

Por los fundamentos antes esbozados, ***confirmamos*** la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones